UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHARLES H. PONSTEIN | * | CIVIL ACTION |
| | * | |
| | * | NO. 08-663 |
| | * | |
| HMO LOUISIANA INC, AMERICAN MEDICAL | * | SECTION "L"(3) |
| SYSTEMS, INC. AND MED UROLOGICAL, INC. | * | |

## ORDER & REASONS

Before the Court are the Parties' cross-motions for summary judgment. For the following reasons, the Plaintiff's Motion for Summary Judgment is DENIED and the Defendant's Motion for Summary Judgment is GRANTED.

### I.  BACKGROUND

This is a case arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"). All South Consulting Engineers, L.L.C., the Plaintiff's employer, established a health plan through HMO Louisiana, Inc., effective September 1, 2004. The Plaintiff enrolled in the plan effective February 1, 2006. At all pertinent times, the Plaintiff was a participant and beneficiary of the employee health benefit plan of All South Consulting Engineers, L.L.C. HMO Louisiana, Inc. is the administrator of the plan. The plan gives HMO Louisiana, Inc. discretionary authority to determine eligibility for benefits.

The Plaintiff was diagnosed with impotence as a result of his prostate cancer and, on May 22, 2006, the Plaintiff underwent a procedure to address his erectile dysfunction. According to the Plaintiff, his physician recommended, and his HMO pre-authorized, a medical procedure to have a penile prosthesis inserted. According to the Plaintiff, his HMO paid the hospital and physicians for the procedure in July of 2006, but withdrew the payment in October of 2006. The

medical device malfunctioned and he needed an emergency procedure to have it removed on January 16, 2007. Plaintiff's physician requested authorization for the removal of the implant, and the request was denied. The Plaintiff states that he has exhausted administrative remedies and appeals and seeks to have the medical costs for insertion and removal paid. The Plaintiff filed suit on January 16, 2008, alleging breach of contract, failure to inform the Plaintiff of the terms of the contract, arbitrary and capricious denial of the claim and seeks damages, including pain and suffering.

On June 30, 2008, the Court granted the Plaintiff's Motion to Dismiss other Defendants, American Medical Systems, Inc. and Med Urological, Inc., alleged manufacturers of the penile prosthesis. The remaining Defendant, HMO Louisiana Inc. has answered and denies liability. The Defendant indicates that it is a wholly owned subsidiary of Blue Cross and Blue Shield of Louisiana. It states that the services for which the Plaintiff seeks payment are not covered by the health insurance policy (the "Plan").

**II.      THE MOTIONS**

The Plaintiff seeks summary judgment finding that the Plaintiff is entitled to coverage under the Plan for the medical treatment at issue. The Defendant's actions and the information in Plaintiff's Group Member Handbook led the Plaintiff to believe that the treatment at issue would be covered by the Plan. The Plaintiff asserts that he reasonably relied on this information, to his detriment. Thus, the Defendant is equitably estopped from denying benefits under the policy. The Plaintiff also claims that the Defendant has waived its coverage defenses. Further, the Plaintiff asserts that conflict in the language in the Group Member Handbook and the Schedule of Benefits resulted in ambiguity in the policy coverage that should be construed in favor of the Plaintiff.

In its motion for summary judgment, the Defendant asserts that the administrative record is complete and Defendant's denial of coverage is subject to the abuse of discretion standard of review. Under the unambiguous terms of the policy, the Plaintiff is not entitled to coverage for the insertion or removal of a penile prosthesis, and the refusal to cover the procedures is not an abuse of discretion. The Defendant also seeks summary judgment finding that this suit is governed by ERISA and Plaintiff's state law claims are preempted. Finally, the Defendant asserts that the Plaintiff's claims for the implantation of the device are prescribed under the terms of the policy.

### III.     ANALYSIS

#### a)     Summary Judgment Standard

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. Where cross-motions for summary judgment are presented, "the motions are reviewed independently, with evidence and inferences taken in the light most favorable to the nonmoving party." *White Buffalo Ventures, L.L.C. v. Univ. of Tex. at Austin*, 420 F.3d 366 (5th Cir.2005). If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir.1995).

#### b)     Affidavit of Charles H. Ponstein

As a preliminary matter, the Plaintiff has submitted an affidavit in support of his motion. The affidavit outlines the relevant dates and procedures and states that the Plaintiff

relied on the Schedule of Benefits in concluding that the insertion and removal of the penile prosthesis would be a covered medical expense. The Defendant suggests that the administrative record is complete and the affidavit should not be considered. The Defendant further notes that the affidavit contains no affirmative allegation that the affiant spoke with personal knowledge of the matters addressed therein, and that four of the statements are purely argumentative.

The case law in the Fifth Circuit is clear that, when assessing factual questions in ERISA disputes, the district court is limited to review of the administrative record. *Estate of Bratton v. National Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir.2000); *Vega v. National Life Ins. Serv., Inc.*, 188 F.3d 287, 299 (5th Cir.1999). The administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it. *Id.* at 300. The district court may not accept evidence outside of the administrative record, with certain limited exceptions. *Vega*, 188 F.3d at 299. A court may accept evidence regarding the administrator's interpretation of terms of the plan, and may accept evidence like expert opinion that assists the court in understanding medical terminology or practice. *Id.* However, neither of these two exceptions apply to Mr. Ponstein's affidavit.

The purpose of the limitation on the district court's review is to encourage plaintiffs to submit all relevant evidence at the administrative stage and to make good faith efforts to resolve claims with the administrator prior to filing suit. *Id.* This purpose would be defeated by admission of Mr. Ponstein's affidavit for the purposes of reviewing the denial of benefits.

**c)** **Preemption**

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, --- U.S. ----, 128

S.Ct. 2343, 2346, 171 L.Ed.2d 299 (2008) (citing 29 U.S.C. § 1001 et seq ., 29 U.S.C. § 1132(a)(1)(B)). Congress included a broad preemption provision in ERISA, providing that ERISA "shall supersede any and all State laws insofar as they now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The phrase "relates to" has been broadly interpreted by the courts to include state laws that contain a "connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). ERISA will be found to preempt a state law that (1) addresses an area of exclusive federal concern, and (2) directly affects the relationship between the traditional ERISA entities, namely the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Reliable Home Health Care v. Union Central Insurance Co.*, 295 F.3d 505, 515 (5th Cir.2002). To determine if a state law claim "relates to" an employee benefit plan the Fifth Circuit considers if the claim would cease to exist if it were stripped of its link to the ERISA plan. *See Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1220 (5th Cir.1992). State common law claims are not spared from ERISA's broad preemptive reach. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139-140, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

The parties agree that this case is governed by ERISA. Plaintiff's state law claims and remedies, including Plaintiff's state claims for penalties and attorney fees under La. Rev. Stat. § 22:657 (now La. Rev. Stat. §22:1821) are preempted as they relate to the Plaintiff's claim for benefits under the employee benefit plan. *See Taylor v. Blue Cross/Blue Shield of New York*, 684 F.Supp 1352 (E.D.La.1988); *Cunningham v. Petroleum Professional Int.*, 2006 Wl 1044153 (W.D.La. Apr. 19, 2006) ("it is well settled that plaintiff's 'bad faith' claim for Louisiana statutory penalties and attorney's fees pursuant to La.R.S. 22:657 is preempted by ERISA, notwithstanding the fact that the statute is part of the Louisiana Insurance Code.").

### d) Prescription

ERISA does not provide a statute of limitations for suits brought under §502(a)(1)(B) to recover benefits. Thus, courts look to the state statute of limitations most analogous to the claim being advanced. *Hall v. National Gypsum Co.*, 105 F.3d 225 (5th Cir.1997). Choosing which state statute to borrow is unnecessary, however, where the parties have contractually agreed upon a limitations period. *Northlake Regional Medical Center v. Waffle House System*, 160 F.3d 1301, 1302 (11th Cir.1998). "Contractual limitations periods on ERISA actions are enforceable, regardless of state law, provided they are reasonable." *Id.*

The policy states "No lawsuit may be filed: 2. ... any later than fifteen (15) months after the date services are rendered." (ADMIN-000078). The Defendant asserts that the Plaintiff's claims against HMO Louisiana, Inc. for the May 2006 implantation are prescribed. Plaintiff filed suit on January 16, 2008, some twenty months after the insertion of the penile prosthesis. Accordingly, absent a valid challenge to the validity of the prescriptive period, the Plaintiff's claims for the insertion of the prosthesis are prescribed.

The Plaintiff asserts that the prescriptive period in the policy is unenforceable as it is contrary to both federal and state law. In response, Defendant cites *Northlake*, which upheld a 90-day limitations period as reasonable. 160 F.3d 1301. However, in *Northlake*, the time limit to file suit did not begin to run until after the last stage of the administrative process. *Id.* at 1304. In the instant case, the policy provides that the limitations period will begin to run from the date services are rendered. Where the limitations period is measured from the date the disputed care was rendered, the Court must take care to ensure the limitations period is reasonable and that the specter of the substantial compression of a Plaintiff's time to sue does not materialize. *See e.g. Hansen v. Aetna Health and Life Ins. Co.*, 1999 WL 1074078 (D.Or. Nov. 4, 1999).

Mr. Ponstein did not have a reason to file suit in May of 2006. The Defendant paid the May 22, 2006 hospital bill of St. Tammany Parish, and on July 10, 2006 the Plaintiff received notice that the total patient responsibility was "$200.00." (ADMIN-000128). On July 3, 2006, the Defendant also provided Mr. Ponstein an explanation of benefits indicating that the medical treatment of Dr. Jerry Rosenberg was covered, and that the patient responsibility was "0.00." (ADMIN-000129). The Defendant did not withdraw payment until October, 2006, less than fifteen (15) months before the Plaintiff filed suit.

The Plaintiff further asserts that he waited to file suit because an executive of HMO Louisiana, Inc. told him he had to file an administrative appeal before filing suit. The Plaintiff cites Fifth Circuit precedent noting, "An ERISA cause of action accrues when a request for benefits is denied." *Hogan v. Kraft Foods*, 969 F.2d 142 (5th Cir.1992) (applying analogous Texas statute of limitations of four years to ERISA claim where contract did not otherwise provide limitations period). The appeals process concluded with the denial of the Plaintiff's second level of appeal on September 11, 2007, just four months before the Plaintiff filed suit. Under the undisputed facts of the instant case, the Plaintiff had no reason or basis to file suit until, at the very least, October 2006 when his claim was reevaluated and benefits withdrawn. Suit was filed within fifteen (15) months of that date. This was reasonable. Thus, the claim was timely filed.

e)  **Review of ERISA Claims**

Federal Courts have exclusive jurisdiction to review determinations made by employee benefit plans, including disability benefit plans. With regard to the interpretation of the terms, a plan administrator's denial of benefits under ERISA is reviewed under a de novo standard unless the benefit plan gives the plan administrator the discretionary authority to

construe the terms of the plan, in which case, the standard of review is abuse of discretion. *Firestone Tire and Rubber Co. et al. v. Bruch, et al.*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see also Ramos v. BellSouth Long Term Disability Plan, et al.*, 2001 WL 1352319, *3 (E.D.La. Nov. 1, 2001). In the instant case, the HMO Louisiana, Inc. Plan is explicit that the administrator is vested with discretion to determine benefit eligibility. The Plan provides, "The Company has full discretionary authority to determine eligibility for Benefits and/or to construe the terms of this Contract." (ADMIN-000075). Therefore, this Court will review the denial of benefits under an abuse of discretion standard.

The Fifth Circuit has delineated a two-step process to review a plan fiduciary's interpretation of its plan:

> First, a court must determine the legally correct interpretation of the plan. If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion. In answering the first question, i.e., whether the administrator's interpretation of the plan was legally correct, a court must consider:
> (1) whether the administrator has given the plan a uniform construction,
> (2) whether the interpretation is consistent with a fair reading of the plan, and
> (3) any unanticipated costs resulting from different interpretations of the plan.

*Ellis v. Liberty Life Assur. Co. Of Boston*, 394 F.3d 262, 269-70 (5th Cir. 2004). "If [the Court] determine[s] that the fiduciary's interpretation of the plan was legally correct, the inquiry is over, pretermitting any need to consider whether a legally incorrect interpretation of the fiduciary was not an abuse of discretion." *Id*. If the Court determines that the fiduciary's interpretation of the plan was legally incorrect, the Court turns to the second issue: abuse of discretion. In reviewing a decision for abuse of discretion, the Court considers whether the decision was arbitrary or capricious. "When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, we affirm an administrator's decision if it is supported by substantial evidence."

*Broussard v. Jefferson Pilot Financial Ins. Co.*, 2006 WL 681189 (W.D.La. Mar. 15, 2006) (citing *Meditrust Financial Services Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 214-15 (5th Cir.1999)). "A decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Id*.

The abuse of discretion standard is modified if there is a conflict of interest, as where the insurer is also the plan administrator. *Broussard v. Jefferson Pilot Financial Insur. Co.*, 2006 WL 681189 (W.D.La. Mar. 15, 2006). "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (citations omitted). The standard is subject to a sliding scale: "The greater the evidence of conflict on the part of the administrator, the less deferential [the Court's] abuse of discretion standard will be." *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, FN18 (5th Cir.2004) (citing *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637-38 (5th Cir.), modified, 979 F.2d 1013 (1992)).

However, the Court will not assume a conflict exists just because a plan fiduciary both insures the plan and administers it. An ERISA plaintiff must come forward with evidence that a conflict exists, and any reduction in the degree of the Court's deference depends on such evidence. *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262 at FN18 (5th Cir.2004). In the instant case the Plaintiff has made no argument and set forth no evidence that a conflict exists. The Plaintiff has not made the requisite showing of probative evidence, beyond the fact of the apparent conflict, indicating that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary. *See Vega*, 188 F.3d 287, 297 (5th Cir.1999).

The Court finds that the administrator's interpretation of the Plan was legally correct.

The Medical Director's review of the Plaintiff's claim stated that the claim should be denied as excluded by the contract. Services for the implantation or removal of a penile prosthesis are specifically excluded by Article XVII of the Plan:

> B. ...Unless otherwise shown as covered in the Schedule of Benefits, the following are not covered, REGARDLESS OF CLAIM OF MEDICAL NECESSITY:
> ...
> 6. Services, surgery supplies, treatment or expenses in connection with or related to, or complications from the following, REGARDLESS OF CLAIM OF MEDICAL NECESSITY:
> ...
> f. implantation, removal, and/or re-implantation of penile prosthesis and services, illnesses, conditions, complications and/or treatment in relation to or as a result of penile prosthesis...

(ADMIN -000063). Plaintiff points to the Schedule of Benefits, which provides co-payment amounts for "Prosthetic Appliances." However, in contractual interpretation specific provisions control general provisions. Article XVII specifically excludes services relating to penile protheses. The Plaintiff also claims that his services were preauthorized. However, Article I of the Plan, defining Authorizations, states "An Authorization is not a guarantee of payment." Further, the May 18, 2006 letter purportedly authorizing the Plaintiff's stay in the hospital reserved the right to review treatment. (ADMIN-000-119). The Court finds that the Defendant was correct in its interpretation of the clear terms of the Plan indicating that services related to the insertion or removal of a penile prosthesis are not covered.

Even if the Court assumed that the Defendant's interpretation of the plan is legally incorrect, the Court finds that the decision denying payment for the services at issue was supported by substantial evidence and was not an abuse of discretion. The Plaintiff takes the position that he is entitled to payment because the Plan was ambiguous, as evidenced by the fact

that the Defendant paid his May 22, 2006 hospital bill of St. Tammany Parish. Since the July 3, 2006 Schedule of Benefits also indicated that the Total Responsibility was $0.00 (ADMIN-000129), Plaintiff urges the Court to find either that the policy is ambiguous or that the Defendant waived its right to deny coverage. The fact that the Defendant originally paid the Plaintiff's claim is not an indication of coverage. In fact, payment of the claim is an indication that the Defendant acted in good faith. Just because the Defendant originally granted benefits, the Defendant is not estopped from terminating the benefits when substantial evidence supports its decision. *Ellis*, 394 F.3d at FN 23. This provision is to ensure that a claimant can receive prompt medical care and worry about payment later. Any other result would have a chilling effect on the Plan's willingness to pay when there is even a possibility of coverage. Thus, the denial of payment for the instant claims was not an abuse of discretion.

f)      **Equitable Estoppel**

The Plaintiff contends that the Defendant should be equitably estopped from denying benefits. The Fifth Circuit, in *Mello v. Sara Lee Corp.*, 431 F.3d 440 (5th Cir.2005), recognized the viability of equitable estoppel claims in ERISA cases. To establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon that representation; and (3) extraordinary circumstances. *Id.* at 444-45. Because the application of ERISA-estoppel is a legal theory rather than an interpretation of the Plan's terms, it should be reviewed de novo. *Id*.

Even if the Plaintiff in this case can establish that a material misrepresentation was made, and that the circumstances are extraordinary, the Plaintiff cannot establish that his reliance on non-binding letters or oral representations was reasonable. As noted above, the Plan terms were unambiguous with regard to the exclusion of services relating to a penile prosthesis. The

Fifth Circuit has held that a finding that the terms of the Plan are unambiguous undercuts the reasonableness of any detrimental reliance. *Id.* (citing *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litigations*, 58 F.3d 896, 902 (3d Cir.1995)).The letter allegedly pre-authorizing the service of May 22, 2006 indicated that the claim was still subject to review. Any reliance on this letter to modify the terms of the Plan would be unreasonable.

Although the Plaintiff also asserts that his physician was informed by telephone that treatment would be covered, the Defendant indicates that the conversation included the standard disclaimer that all treatment was subject to review. Further, the Fifth Circuit has clearly stated that "ERISA-estoppel is not permitted if 'based on purported oral modifications of the plan terms.'" *Mello*, 431 F.3d at 446 (citing *Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 289 (5th Cir.1997)). The *Mello* court further noted that "[s]uch claims are precluded because ERISA provides that every employee benefit plan shall be established and maintained pursuant to a written instrument." *Id.* (internal citations omitted). Considering ERISA's policy against informal modifications of plan terms, the Plaintiff was not reasonable in relying on any oral statements made by the Defendant to third parties regarding coverage.

The Plaintiff asserts that he reasonably relied on the Defendant's representations because he did not receive a copy of the health insurance policy at any time prior to the denial of benefits. In *Sprague v. GMC*, the Sixth Circuit stated that a "party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents *available to* or furnished to the party." 133 F.3d 388, 404 (6th Cir.1998) (emphasis added). The Plaintiff does not assert that the plan documents were not available to him. Even if Plaintiff did not receive a complete copy of the subject policy, his reliance on alleged pre-authorizations to explain his entitlement to benefits would be unreasonable in light of the

disclaimers provided by the Defendant.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Defendant HMO Louisiana, Inc.'s Motion for Summary Judgment (Rec. Doc. No. 17) is GRANTED and that the Plaintiff's claims are hereby DISMISSED WITH PREJUDICE. IT IS FURTHER ORDERED that the Plaintiff Charles H. Ponstein's Motion for Summary Judgment (Rec. Doc. No. 16) is DENIED.

New Orleans, Louisiana this 11th day of May, 2009.

UNITED STATES
DISTRICT JUDGE